[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 9, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-11736
Non-Argument Calendar

_____

BIA No. A79-668-872

MARIA WAMBUI NJENGA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(February 9, 2007)

Before ANDERSON, BLACK and MARCUS, Circuit Judges.

PER CURIAM:

Maria Wambui Njenga, a native and citizen of Kenya, through counsel, seeks review of the Board of Immigration Appeals' ("BIA's"), decision adopting and affirming the Immigration Judge's ("IJ's") order of removal and denial of her application for asylum, withholding of removal, and Convention Against Torture ("CAT") relief under the Immigration and Nationality Act ("INA").[1]

On appeal, Njenga, acknowledging that her application for asylum was untimely, argues that the BIA and IJ failed to consider the changed conditions and extraordinary circumstances that affected her ability to timely file an application within the one-year period. Second, Njenga argues that she qualifies for withholding of removal because the one-year filing deadline does not apply in that regard, her women's enterprise group qualified as a social group for the purposes of the INA, and the alleged persecutors were members of the government or persons the government was unwilling or unable to control. Third, Njenga argues that the IJ abused its discretion when it denied her request for voluntary departure.

## I.

As a threshold matter we are obligated to inquire into subject matter jurisdiction whenever it may be lacking. Chacon-Botero v. United States Att'y

---

[1] Because Njenga did not raise the issue of CAT relief before the BIA, she did not exhaust her administrative remedies, and, therefore, we lack jurisdiction to consider this issue. See Sundar v. INS, 328 F.3d 1320, 1323 (11th Cir. 2003). Moreover, because Njenga does not raise the issue of CAT relief in her counseled brief, that issue is abandoned. See Sepulveda v. United States Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

2

Gen, 427 F.3d 954, 956 (11th Cir. 2005). We review our subject-matter jurisdiction de novo. Gonzalez-Oropeza v. United States Att'y Gen., 321 F.3d 1331, 1332 (11th Cir. 2003).

An alien can apply for asylum if she "demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." INA § 208(a)(2)(B), 8 U.S.C. § 1158(a)(2)(B). An application filed after one year may also be considered "if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period specified . . . ." INA § 208(a)(2)(D), 8 U.S.C. § 1158(a)(2)(D). Nevertheless, § 1158(a)(3) provides, "No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)." 8 U.S.C. § 1158(a)(3).

Recently, Congress enacted the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 310 (2005), and changed certain rules governing immigration appeals. Because the effective date of the Act is May 11, 2005, many of the substantive provisions do not apply because Njenga filed her asylum application before that date.

3

By contrast, the REAL ID Act's jurisdictional provisions are applicable.  For instance, section 106(a)(1)(A)(iii) of the REAL ID Act amended INA § 242, 8 U.S.C. § 1252, adding subsection (a)(2)(D), which reads "[n]othing in subparagraph (B) [removing jurisdiction for review of denials of discretionary relief] or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section."  8 U.S.C. § 1252(a)(2)(D) (as amended by the REAL ID Act § 106(a)).  Section 1252(a)(2)(D) "shall take effect upon the date of the enactment" and it shall apply to any case "in which the final administrative order of removal, deportation, or exclusion was issued before, on, or after the date of the enactment."  REAL ID Act § 106(b), Pub. L. No. 109-13, 119 Stat. 231, 311.  This section of the REAL ID Act applies to this appeal.

However, we recently held that the enactment of the REAL ID Act did not vest us with jurisdiction to review a finding that an asylum application was untimely or that extraordinary circumstances justified an untimely filing because these were discretionary or factual determinations.  Chacon-Botero, 427 F.3d at 957.  Therefore, under current precedent, § 1158(a)(3) divests us of jurisdiction to review the BIA's determinations that an asylum applicant filed an untimely

4

application or failed to establish changed or extraordinary circumstances to excuse her untimely filing. Fahim v. United States Att'y Gen., 278 F.3d 1216, 1217-18 (11th Cir. 2002).

We lack jurisdiction to review the IJ's determination that Njenga failed to demonstrate that extraordinary circumstances or changed country conditions justified her untimely filing. See Fahim, 278 F.3d at 1217-18; 8 U.S.C. § 1158(a)(3). Accordingly, we dismiss Njenga's petition for review in this respect.

## II.

As a general issue, when the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Insofar as the BIA adopts the IJ's reasoning, we will review the IJ's decision as well. Id. Here, because the BIA expressly adopted the IJ's reasoning, we would normally be called upon to review the IJ's decision as well. Chacon-Botero, 427 F.3d at 956.

To the extent that the IJ's decision was based on a legal determination, our review is de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001). However, de novo review of the BIA's interpretation is informed by the principle of deference articulated in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

5

Castillo-Arias v. United States Atty. Gen., 446 F.3d 1190, 1195 (11th Cir. 2006) (quotations and marks omitted).

The IJ's factual determinations are reviewed under the substantial-evidence test, and we "must affirm the [IJ's] decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Al Najjar, 257 F.3d at 1283-84 (citation omitted). The substantial evidence test is "deferential" and does not allow "re-weigh[ing] the evidence from scratch." Mazariegos v. United States Att'y Gen., 241 F.3d 1320, 1323 (11th Cir. 2001). "To reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. United States Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003) (considering withholding of removal claim).

An alien seeking withholding of removal under the INA may show, among other things, that her life or freedom would be threatened on account of her membership in a particular social group. Sanchez v. United States Att'y Gen., 392 F.3d 434, 437 (11th Cir. 2004). Here, Njenga bears the burden of demonstrating that she more-likely-than-not would be persecuted or tortured upon return to Kenya. See id. This standard is more stringent than the "well-founded fear" standard for asylum. Mazariegos, 241 F.3d at 1324 n.2. Hence, an alien who is unable to meet the well-founded fear standard for asylum necessarily is unable to qualify for withholding of removal. See Al Najjar, 257 F.3d at 1292-93.

6

An alien who arrives in or is present in the United States may apply for asylum. See INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The Attorney General has discretion to grant asylum if the alien meets the INA's definition of a "refugee." See INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" is

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. . . .

8 U.S.C. § 1101(a)(42)(A) (emphasis added). The asylum applicant carries the burden of proving statutory "refugee" status. See Al Najjar, 257 F.3d at 1284.

To establish asylum eligibility, the alien may establish, among other things, a "well-founded fear" that the statutorily listed factor--membership in a particular social group--will cause such future persecution. 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287. "Demonstrating such a connection requires the alien to present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of such [membership in a particular social group]." Id. (internal quotations and citation omitted) (emphasis in original). Thus, an asylum applicant may not show merely that she is a member of a particular social group, but must show that she was persecuted on account of membership in

7

a particular social group. Castillo-Arias, 446 F.3d at 1198. "The statute governing withholding of removal protects not only against persecution by government forces, but also against persecution by non-governmental groups that the government cannot control." Sanchez, 392 F.3d at 437.

"Congress did not directly speak on the issue of what constitutes a 'particular social group,' . . . within the meaning of the INA." Castillo-Arias, 446 F.3d at 1196. Accordingly, we must follow the BIA's determination that women in Kenya involved in the marketplace or women who are trying to have financially rewarding jobs in Kenya are not a social group under the INA unless the interpretation is unreasonable, i.e., arbitrary, capricious, or clearly contrary to law. Id. In Castillo-Arias, we held that the BIA's requirement of a "common, immutable characteristic . . . [that] is fundamental to [its members'] individual identities or consciences, which is consonant with the purposes that underlie the other four grounds for refugee status or withholding of deportation under the INA" was a reasonable interpretation of membership in a particular social group for purposes of asylum. Id. at 1196-97 (internal quotations omitted) (citing Matter of Acosta, 19 I. & N. Dec. 211, 233-34 (BIA 1985), overruled on other grounds by Matter of Mogharrabi, 19 I. & N. Dec. 439, 447 (BIA 1987)). We further observed that the standard set forth in Acosta struck "an acceptable balance between (1) rendering particular social group a catch-all for all groups who might claim

8

persecution, which would render the other four categories meaningless, and (2) rendering particular social group a nullity by making its requirements too stringent or too specific." Id. at 1197 (internal quotations omitted).

Substantial evidence supports the IJ's decision that Njenga was not entitled to withholding of removal under the INA. First, the IJ found, and the BIA agreed, that women involved in the market enterprise, or women in Kenya who are trying to have financially rewarding jobs does not fit within the meaning of membership in a particular social group. See Castillo-Arias, 446 F.3d at 1195. Njenga fails to demonstrate how this alleged social group shares common, immutable characteristics that are fundamental to its members' individual identities or consciences. See id. at 1196-97. To the extent working and earning an income was proffered as a partial basis for concluding that the women's enterprise was a distinct social group, the record before the IJ showed that Njenga did both of these when she worked in the travel industry for about four years before joining the women's enterprise. Furthermore, if Njenga could have changed the location of the textile stalls, then she would not have had to change a characteristic so fundamental to her individual identity.

Second, the IJ found, and the BIA agreed, that Njenga could not prove that the attackers were motivated by the government, or had any connection with the government. At the removal hearing, Njenga admitted that she was not certain of

9

the thugs' identities, but only that she suspected their connection to the government. Moreover, the government presented evidence, and Njenga admitted, that the Kenyan government had pursued her landlord, who she claimed was responsible, at least in part, for the attacks. The evidence also showed that Njenga was encouraged to report any further attacks and to seek out the police's assistance in this respect. Thus, substantial evidence supports the IJ's finding that Njenga failed to demonstrate that she was persecuted by anyone supported by the government or that the government was unable to protect her. See 8 U.S.C. § 1101(a)(42)(A).

Because Njenga could not show that she was targeted on account of a protected group, or that she was persecuted by anyone supported by the government or that the government was unable to protect her, she was not entitled to asylum.[2] Because the burden of proof for withholding of removal under the INA is higher that the burden to secure asylum, Njenga's claim for withholding of removal fails. See Al Najjar, 257 F.3d at 1303. In sum, the IJ's findings are

---

[2] Njenga did not claim withholding of removal on the basis of female circumcision or genital mutilation before the IJ or BIA; thus, she did not exhaust her administrative remedies in this regard. See Amaya-Artunduaga v. United States Att'y Gen., 463 F.3d 1247, 1250-51 (11th Cir. 2006). Accordingly, we lack jurisdiction to review this claim on appeal. See Sundar, 328 F.3d at 1323. In addition, the passing references in Njenga's argument in her counseled brief are insufficient to raise this issue on appeal, accordingly; she has abandoned it. See Sepulveda, 401 F.3d at 1228 n.2.

supported by substantial evidence, and therefore, we deny Njenga's petition for withholding of removal.

## III.

The Attorney General may permit an alien to voluntarily depart the United States at the alien's own expense if, at the conclusion of a removal proceeding, the IJ enters an order granting voluntary departure in lieu of removal and finds that: (1) the alien has been physically present in the United States for a period of at least one year immediately preceding the date the notice to appear was served; (2) the alien is, and has been, a person of good moral character for at least 5 years immediately preceding the alien's application for voluntary departure; (3) the alien is not deportable under section 1227(a)(2)(A)(iii) or section 1227(a)(4) of this title; and (4) the alien has established by clear and convincing evidence that the alien has the means to depart the United States and intends to do so.  8 U.S.C. § 1229c(b)(1). No court, however, shall have jurisdiction over an appeal from denial of a request for an order of voluntary departure under subsection (b) of this section, nor shall any court order a stay of an alien's removal pending consideration of any claim with respect to voluntary departure.  INA § 240B(f), 8 U.S.C. § 1229c(f).

A court may review a final order of removal only if the alien has exhausted all administrative remedies available to the alien as of right.  8 U.S.C. § 1252(d)(1); <u>Sundar v. INS</u>, 328 F.3d 1320, 1323 (11th Cir. 2003).  We have

11

"interpreted that requirement to be jurisdictional, so we lack jurisdiction to consider claims that have not been raised before the BIA." Id.

Similarly, the INA prohibits us from reviewing "any other decision or action of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General . . . ." 8 U.S.C. § 1252 (a)(2)(B)(ii).

Upon review of the record, and upon consideration of the briefs of the parties, we find that we have no jurisdiction to hear Njenga's claim for voluntary departure.

In this case, we lack jurisdiction both because Njenga did not raise this issue before the BIA, and because the IJ made a factual determination that she did not qualify for voluntary departure based on her lack of intent to leave. See 8 U.S.C. § 1229c(f); Sundar, 328 F.3d at 1323. Accordingly, we dismiss Njenga's petition as to the IJ's denial of her request for voluntary departure.

**PETITION DENIED IN PART, DISMISSED IN PART.**